Hofgur LLC v D.A. (2026 NY Slip Op 50273(U))

[*1]

Hofgur LLC v D.A.

2026 NY Slip Op 50273(U)

Decided on March 8, 2026

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 8, 2026
Civil Court of the City of New York, Queens County

Hofgur LLC DBA 
 QUEENS ADULT CARE CENTER, Petitioner-Landlord,

againstD.A., Respondent.

Index No. L&T 307409-24

White, Cirrito, Nally & Lynch LLP, counsel for PetitionerQueens Defenders, counsel for RespondentDr. Rachel Gordon, guardian ad litem for Respondent

Logan J. Schiff, J.

PROCEDURAL HISTORY AND BACKGROUND
Petitioner Hofgur LLC, doing business as Queens Adult Care Center, commenced this summary holdover proceeding against Respondent D.A. upon filing the Petition and Notice of Petition on May 8, 2024. The proceeding is premised on the termination of an admission agreement for occupancy of a shared room in a licensed adult care facility pursuant to Social Services Law § 461-g and RPAPL § 713-a. Prior to commencement, Petitioner served a 30-day notice of termination on Respondent on February 23, 2024, advising him that his residency agreement would be terminated as of March 31, 2024, because he "repeatedly behaves in a manner which directly impairs the well-being, care of safety of the resident or other residents, or which substantially interferes with the orderly operation of the facility." The notice alleged that management found the unit to be excessively cluttered during an inspection, and that Respondent thereafter refused offers of assistance to clean the space, including by providing storage. A copy of the notice was served on the New York State Department of Health (DOH), the state agency with statutory oversight of adult homes (see Matter of Oceanview Home for Adults, Inc. v Zucker, 43 NY3d 522 [2025]).
Respondent has never appeared. In lieu of entering a default judgment, the court appointed Dr. Rachel Gordon as guardian ad litem (GAL) by decision and order dated March 4, 2025, to ensure that Respondent's interests were adequately represented (see CPLR 1203). Dr. Gordon visited the premises on multiple occasions to confer with her ward and provide photographic updates as to the state of the unit to the court and opposing counsel, liaised with the city agency Adult Protective Services to facilitate a deep cleaning of the room, and ultimately retained the nonprofit Queens Defenders as counsel, which interposed an answer on November 29, 2025.
Following several unsuccessful settlement conferences, the court conducted a trial on [*2]January 13 and February 13, 2026.
THE TRIALPetitioner called one witness, Michael Yunger, the administrator of Queens Adult Care Center, a NYS-licensed adult care facility, with approximately 180 shared rooms. During Mr. Yunger's testimony, the court admitted Petitioner's operating certificate, Respondent's admission agreement, and Petitioner's case notes concerning its interactions with Respondent in relation to the condition of the room. Mr. Yunger testified that Respondent's portion of the shared room is overly cluttered; that Mr. Yunger has been personally present in the room on at least a dozen occasions and has observed a large accumulation of items on, next to, or beneath Respondent's desk, specifically electronics equipment, including VCRs, DVDs, and similar items, which obstruct egress and ingress from the room and adversely impact the functionality of the heating and cooling elements in the unit; and that the room's condition has deteriorated over the years, necessitating this eviction proceeding, a last resort. Photographs of the current state of the room were admitted into evidence. The witness further testified that Respondent, who was born in 1958, has been clinically diagnosed with serious mental illness, including a schizophrenia diagnosis at the time of his admission, and more recently with hoarding disorder [FN1]
; that Respondent has been a resident of the facility for 24 years, having transferred from a different adult care center that shut down; and that he is part of a decreasing number of residents, approximately 29% at present, with a serious mental illness diagnosis.[FN2]

During cross-examination, Mr. Younger conceded that he has never taken a temperature reading of the unit or utilized a technician to assess the impact the location of Respondent's desk and personal effects have on the heating and cooling systems, nor has DOH or any other city or state agency issued a violation based on the condition of the room. Mr. Younger likewise acknowledged that, contrary to the claim in the termination notice, Petitioner has never offered to relocate some of Respondent's belongings to a storage space, and that the notice merely was referencing Petitioner's offer to help Respondent put items in the small closet in the room.
Respondent called no witnesses in rebuttal.
DISCUSSIONSocial Services Law (SSL) § 461-g(1) authorizes the termination of an adult home occupancy agreement on limited grounds, including, as is relevant here, "repeated behavior of the resident which directly impairs the well-being, care or safety of the resident or any other resident or which substantially interferes with the orderly operation of the facility" (SSL § 461-g[1][d]; see also 18 NYCRR 487.5 [f][14]). Prior to termination, the adult care operator must [*3]serve the occupant with a termination notice on a form prescribed by DOH, that "contains the reason for the termination of the admission agreement, the date that the discharge will occur, a statement that the resident has a right to object to the termination of the resident's admission agreement and subsequent discharge" (see SSL § 461-g[2][b]).
Here, upon due deliberation, the court finds that Petitioner failed to prove its case, as the evidence does not establish repeated behavior impairing the well-being of any resident or substantially interfering with the orderly operations of the facility (cf. P&A Reckess v Howard, 49 Misc 3d 4 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]). The photographs of the unit in evidence, which the parties agree accurately reflect the current condition of the demised premises, show a clean and tidy room without signs of vermin or pests. Nor can the court discern any evidence of obstructed egress that might constitute a fire hazard. While Petitioner's witness testified that he believes the placement of Respondent's desk and electronics equipment in front of the room's radiator and air conditioning unit impairs the functioning of the HVAC systems, no additional evidence was offered to support this largely speculative testimony, nor has any government agency, including the regulator DOH, issued a violation of any health of safety code regulation. This court will not evict a disabled, long-term resident of a government-regulated adult care facility absent a much more robust evidentiary showing of sustained conduct impairing the health and safety of residents or the orderly operations of the facility (see generally 498 W. End Ave. LLC v Reynolds, 87 Misc 3d 136 [App Term, 1st Dept 2025]; Tsangarinos v Attaway, 43 Misc 3d 142 [App Term, 1st Dept 2014]; Second Farms Neighborhood HDFC v Lessington, 31 Misc 3d 144 [App Term, 1st Dept 2011]). Furthermore, Respondent has the right under DOH regulations to "decorate [his] room to taste in compliance with all applicable local and state fire and safety codes" (18 NYCRR 487.5 [a][3][ix]).
Accordingly, the Petition is dismissed after trial. The clerk is directed to enter a judgment of dismissal in Respondent's favor. This constitutes the decision and order of the court.
Dated: March 8, 2026Queens, New YorkHon. Logan J. Schiff, J.H.C.

Footnotes

Footnote 1:Hoarding disorder is a DSM-V-recognized form of mental illness (see CUCS W. 127th St., LLC v E.E., 80 Misc 3d 995 [Civ Ct, NY Co 2023]).

Footnote 2:DOH regulations define "'persons with serious mental illness' as individuals who have a designated diagnosis of a mental illness that is included in the DSM-V, the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association, 'and whose severity and duration of mental illness results in substantial functional disability'"(Matter of Oceanview Home for Adults, Inc. v Zucker, 43 NY3d 522, 527 [2025], citing 18 NYCRR. § 487.2 [c]).